**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern _____ District of __New York__
                      (State)

Case number (*If known*): _____ Chapter __11__

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | San Juan S.A. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 76.319.883-9 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| Cerro El Plomo 5680 | |
| Number        Street | Number        Street |
| Oficina 1202 | |
| | P.O. Box |
| Las Condes, Santiago, Chile | |
| City                State        ZIP Code | City                State        ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| | Vallenar |
| County | Number        Street |
| | Region of Atacama, Chile |
| | City                State        ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | https://latampower.com/web/ |

| Debtor | San Juan S.A. | Case number *(if known)* |
|---|---|---|
| | Name | |

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

2   2   1   1

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply*:

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☒ A plan is being filed with this petition.

☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

Debtor    <u>San Juan S.A.</u>                     Case number *(if known)*_____
       <sub>Name</sub>

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes.   District _____   When _____   Case number _____
                               MM / DD / YYYY

        District _____   When _____   Case number _____
                               MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes.   Debtor   <u>See Schedule 1 attached.</u>    Relationship _____

        District   <u>Southern District of New York</u>    When _____
                                     MM / DD / YYYY

        Case number, if known _____

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

    What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                 Number        Street

               _____

               _____
                 City                        State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

        Contact name _____

        Phone _____

---

### ■ Statistical and administrative information

---

Debtor   San Juan S.A.
         _____   Case number (*if known*)_____
         Name

| | | |
|---|---|---|
| **13. Debtor's estimation of available funds** | *Check one:*<br>☑ Funds will be available for distribution to unsecured creditors.<br>☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. | |

| | | | | |
|---|---|---|---|---|
| **14. Estimated number of creditors** <br>(on a consolidated basis) | ☐ 1-49<br>☐ 50-99<br>☐ 100-199<br>☑ 200-999 | ☐ 1,000-5,000<br>☐ 5,001-10,000<br>☐ 10,001-25,000 | ☐ 25,001-50,000<br>☐ 50,001-100,000<br>☐ More than 100,000 | |

| | | | |
|---|---|---|---|
| **15. Estimated assets** <br>(on a consolidated basis) | ☐ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☑ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☐ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |

| | | | |
|---|---|---|---|
| **16. Estimated liabilities** <br>(on a consolidated basis) | ☐ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☑ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☐ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   11/30/2023
              MM  / DD / YYYY

✗ _____         Esteban Moraga
  Signature of authorized representative of debtor     Printed name

Title   Chief Executive Officer
        _____

Debtor  San Juan S.A.                                    Case number *(if known)*_____
         Name

18. **Signature of attorney**        ✘ */s/ Oscar N. Pinkas*              Date  11/30/2023
                                        Signature of attorney for debtor        MM  / DD / YYYY

                                        Oscar N. Pinkas, Esq.
                                        Printed name
                                        Greenberg Traurig, LLP
                                        Firm name
                                        One Vanderbilt Avenue
                                        Number       Street
                                        New York                        NY      10017
                                        City                            State   ZIP Code

                                        (212) 801-9200                  pinkaso@gtlaw.com
                                        Contact phone                   Email address

                                        4528824                         NY
                                        Bar number                      State

Debtor    <u>San Juan S.A.</u>                    Case number (*if known*)_____

# <u>SCHEDULE 1</u>

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "<u>Debtors</u>"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York.  The Debtors have moved for joint administration of these cases for procedural purposes only under the case number assigned to the chapter 11 case of Inversiones Latin America Power Ltda.

1. Inversiones Latin America Power Ltda.
2. San Juan S.A.
3. Norvind S.A.

### BOARD OF DIRECTORS' MEETING

11/30/2023

### SAN JUAN S.A.

In Santiago, Chile, on November 27, 2023, at 09:30 o'clock, at the offices of the company located at Cerro El Plomo 5680, office 1202, Las Condes commune, the following members of the board of directors (the "Board") of **SAN JUAN S.A.** (hereinafter also referred to as the "Company" or "San Juan") met: Mr. Oscar Morales Cabellos, Mr. Vicente Orueta Burchard, and Mr. Esteban Moraga Morales.

Mr. Oscar Morales Cabellos acted as the chairman, and Mr. Esteban Moraga Morales, the General Manager of the Company, acted as the secretary of the minutes.

The following matters were discussed and agreed upon:

## I.    READING AND APPROVAL OF THE PREVIOUS MINUTES

The chairman requested that it be noted that the minutes of the Company's Board meeting had been approved, as they had been signed by all attendees and affixed in the corresponding minutes book prior to this date.

## II.    FINANCIAL SITUATION OF THE COMPANY

The General Manager of the Company takes the floor and states that, as was explained in the previous Board meeting of October 18th, the Company is facing a complex economic and financial situation that has not allowed it to fulfill its obligations. These obligations are related mainly to those arising from the issuance and placement of notes in the United States of America for a total of USD $403 million, due on June 15, 2033, subject to Rule 144A and Regulation S of the Securities Act of 1933 and its amendments, carried out by Inversiones Latin America Power Limitada ("ILAP"), the parent company of the Company, in 2021, in order to obtain financing for the development of the energy projects of the Company and Norvind S.A. ("Norvind", and collectively with the Company and ILAP, the "Companies").  The Company and Norvind are guarantors of ILAP's obligations with respect to the notes issued.

The General Manager states that, as is publicly known, on July 3, 2023, the Companies entered into a *Standstill and Forbearance Agreement* (the "Agreement") with noteholders representing more than 75% (the "Holders") of the outstanding principal amount of the secured notes at a 5.125% interest rate with maturity in 2033, issued in accordance with the *Indenture* dated June 15, 2021.

During the term of the Agreement, the Companies and the Holders have negotiated and analyzed various strategic options and alternatives to address the liquidity situation of the Companies. These negotiations concluded, firstly, in the execution of the document referred to as the *Restructuring Support Agreement* ("RSA"), which establishes the foundation for initiating, a voluntary reorganization process under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New

York, or in another court as agreed upon by the majority of the creditors who are part of the RSA (hereinafter such court, the "Bankruptcy Court" and such process, the "Chapter 11 Proceeding"). The goal of the Chapter 11 Proceeding is to obtain approval for a plan that allows for the restructuring of ILAP's debt, in accordance with the terms and conditions agreed upon in the document referred to as the Restructuring Term Sheet, attached to the RSA (the "Restructuring").

The RSA contains the framework through which ILAP intends to restructure its debt. In preparation for this, a series of documents are being developed to describe in detail the restructuring plan (the "Plan") to be submitted in the Chapter 11 Proceeding, including, without limitation, the *Disclosure Statement*, *Indenture of SSN and SPN*, *Indenture of the Convertible Notes*, and *Sales Facilitation Agreement*.

The General Manager states that the Companies intend to initiate the Chapter 11 Proceeding in the coming days, with the expectation of completing the process within the first quarter of 2024. The Restructuring outlined in the RSA and set forth in the Plan will come into effect on the date when the preconditions for the effectiveness of the Plan are met or waived by the majority of the creditors participating in the RSA.

The General Manager continues to report that during these weeks, documentation has been prepared in English to be presented at the commencement of the Chapter 11 Proceeding. The most updated and nearly final versions of these documents have been made available to the directors in advance, among which are, among others, the *Disclosure Statement*, the *Plan*, and the *SSN and SPN Indenture, as well as the Convertible Notes Indenture*.

Finally, the General Manager informs the present directors that, as part of the Restructuring, the parties will enter into a *Sales Facilitation Agreement*, in order to use their best efforts to sell 100% of ILAP's interests to a third party, before December 31, 2025. A nearly-agreed version of the document, which will be granted in English, has been circulated to the Board prior to this meeting.

Furthermore, the General Manager explains that during the Restructuring, the Companies expect to continue fulfilling their obligations to counterparties of their relevant contracts (power supply agreements, operation and maintenance agreements, and lease agreements, among others), and service providers in the ordinary course of business operations.

The General Manager stated that the purpose of this Board meeting is to approve the commencement of the Chapter 11 Proceeding in the coming days, to grant the necessary powers for this purpose, as well as approving the current and nearly finalized content of the Plan, its annexes and other related documents, along with any other documents necessary for such purposes and that are a reflection of the negotiation process, including, merely illustratively, the *Disclosure Statement*, the *SSN and SPN Indenture, the Convertible Notes Indenture* and *Sales Facilitation Agreement*, among others.

The directors expressed their gratitude for the presentation by the General Manager and unanimously agreed to waive the reading of the Plan and its annexes and supplementary documents, considering that all of them had received them prior to this date and are familiar with their content and specific clauses.

## I.    RESOLUTIONS

After a prolonged exchange of comments and opinions, and following a detailed review of the matters discussed, including the Company's liquidity situation, the various existing solution alternatives, the risks faced by the Company, as well as the impact this entails for the business and daily operations of the Company, and having had the opportunity to consult with the financial and legal advisors of the Company and fully consider each of the strategic alternatives available to the Company, and having made available to them the current and/or nearly final versions of the Plan, the Board, by unanimous consent of its members, resolved to:

(i)     Authorize the Company to enter into, sign, and execute the Plan, along with all its annexes and supplementary documents, including, merely illustratively, the *Disclosure Statement*, the *SSN and SPN Indenture, the Convertible Notes Indenture* and the *Sales Facilitation Agreement*, among others, all on the terms presented by the General Manager, as well as all acts and contracts necessary to obtain and implement said agreements and/or carry out, execute, and complete the Restructuring. The Board ratifies expressly and in full any act, contract, or document executed by the Company or taken by an Authorized Signatory (as defined below) or Attorney-in-fact (as defined below) to date in connection with the Plan and the Restructuring, with such acts or contracts being fully binding on the Company, assuming all rights and obligations arising from them.

(ii)    Approve and authorize the commencement of the Chapter 11 Proceeding and the filing and application for approval of the Plan (as amended or modified from time to time, and including all exhibits and supplements thereto), along with any supplementary documents.

(iii)   Grant special powers of attorney, as broad as legally required, to Mr. Esteban Moraga Morales, ID Number 13.669.349-2, Oscar Morales Cabellos, ID Number 23.579.343-1, Vicente Orueta Burchard, ID Number 18.391.766-8, and Ms. Francisca Pérez Castillo, ID Number 17.088.253-9, (each, an "Authorized Signatory" and collectively, the "Authorized Signatories"), who may, acting individually any one of them, or with one or more other Authorized Signatory, and by preceding their signature with the Company's name, represent the Company, in Chile or abroad, in the subscription and execution of the Plan and its annexes and supplementary documents, including, merely illustratively, the *Disclosure Statement*, the *SSN and SPN Indenture, the Convertible Notes Indenture* and the *Sales Facilitation Agreement*, among others, as well as in all types of named or unnamed acts or contracts, whether by public or private instruments related to the foregoing. The Authorized Signatories may make all kinds of statements and warranties, contractual forms and modalities, negotiate and agree on all kinds of covenants or stipulations, whether in Spanish, English, or other languages, including submission to foreign law and courts, in all acts and contracts entered into by the Company; they may include all kinds of clauses in said acts and contracts, whether essential, natural, or merely incidental, with the broadest powers. The Authorized Signatories may carry out each and every action deemed necessary, appropriate, or convenient to consummate the contemplated Restructuring under the Bankruptcy Code, including, without limitation, any action necessary to maintain the ordinary course of business operations of the Company.

Furthermore, the Authorized Signatories may execute, acknowledge, verify, deliver, and present all other agreements, documents, instruments, and certificates, and take other actions that may be necessary, suitable, or appropriate to carry out the intent and purposes of the resolutions contained herein. Each Authorized Signatory of the Company is authorized to certify to third parties with respect to the adoption of these resolutions in form and substance satisfactory to such party.

(iv)    Grant special powers of attorney to the Retained Professionals (as defined herein, and together with the individuals designated in section (iii) above, the "Attorneys-in-fact") so that, acting individually, each of them may, on behalf and in representation of the Company:

(a)    Prepare a plan of reorganization or liquidation for the consideration and approval of creditors and the Bankruptcy Court. Execute and submit on behalf of the Company all petitions, attachments, schedules, and other motions, writings, or documents, and to take any actions they deem necessary, appropriate, or convenient to ensure the proper submission, execution, and implementation of the Chapter 11 Proceeding and the Plan, including, without limitation, any measures necessary to maintain the Company's ordinary course of business.

(b)    Represent and assist the Company in fulfilling its obligations under the Bankruptcy Code and take all necessary measures to assert the rights and obligations of the Company. They are also authorized to execute the relevant retention agreements, make payments for retentions and fees, and to file, with the Bankruptcy Court, an application for authorization to engage and pay for the services of Lazard Frères & Co. LLC, as investment banker; Greenberg Traurig, LLP, as U.S. legal advisor; Barros, Silva, Varela & Vigil Abogados Limitada, as Chilean legal advisors; and Epiq Corporate Restructuring, LLC, as noticing and claims agent (collectively, the "Retained Professionals"). Each Authorized Signatory is authorized, empowered, and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized, empowered and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary, proper, or convenient.

(c)    Request the approval of one or more motions authorizing the use of cash collateral, as defined in section 363(a) of the Bankruptcy Code, and, to the extent necessary, the obtaining of financing during the Chapter 11 Proceeding known as debtor-in-possession financing ("DIP Financing") in accordance with the terms agreed upon in the RSA and the *Restructuring Term Sheet*. To this end, the Attorneys-in-fact may negotiate, execute, and deliver each and every agreement, instrument, or document, on behalf of the Company, that is necessary for use of cash collateral, as well as any additional or subsequent agreement to implement any DIP Financing. These may include, without limitation, the creation of liens in favor of existing lenders and any other agreement, instrument, or document that must be executed and delivered in connection therewith. All of this is subject to any changes and additions approved by any of the Attorneys-in-fact. Such approval shall be conclusively proven by the

adoption of such measure or by the execution and delivery thereof, subject to the approval of the Bankruptcy Court.

It is expressly noted that the powers granted in this Board meeting do not revoke any other power previously granted by the Company before this date, which remains fully valid and in force.

## III.   ENFORCEMENT OF THE AGREEMENTS AND FILING INTO PUBLIC DEED.

The Board unanimously resolved to empower Mr. Fernando Barros Vial, Ms. Josefina María Castro Undurraga, and Ms. Natalia Galindo Bañados, individually, to formalize into a public document all or part of the minutes that will be drawn up for this meeting, once it is signed by all attendees, and to carry out all necessary or convenient procedures, actions, and steps to legalize the resolutions previously adopted.

The Board received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waives any right to have received such notice.

The Board irrevocably waived notice of the time, place, and purpose of the meeting and any adjournments thereof, to the extent such notice was required by the organizational documents of the Company.

The Board unanimously agreed that the resolutions made in this meeting will take effect immediately once the minutes are signed by all attending directors, without the need for approval in a subsequent meeting or the fulfillment of any further formality.

*[Remainder of page is intentionally blank]*

With no further matters to discuss, and at 10:00 o'clock, those present were thanked for their attendance, and the meeting was adjourned.

**Oscar Morales Cabellos**
Chairman

**Esteban Moraga Morales**
Secretary

**Vicente Orueta Burchard**
Director

## SESIÓN EXTRAORDINARIA DE DIRECTORIO

## SAN JUAN S.A.

En Santiago de Chile, a 27 de noviembre de 2023, siendo las 09:30 horas, en las oficinas de la sociedad ubicadas en Cerro El Plomo 5680, oficina 1202, comuna de Las Condes, se reunió el directorio de **SAN JUAN S.A.**, en adelante también la "Sociedad" o "San Juan", con los siguientes directores de la Sociedad: don Óscar Morales Cabellos, don Vicente Orueta Burchard y don Esteban Moraga Morales.

Actuó como presidente don Óscar Morales Cabellos y como secretario de actas, el gerente general de la sociedad don Esteban Moraga Morales.

Se trató y acordó lo siguiente:

## I.   LECTURA Y APROBACIÓN DEL ACTA ANTERIOR

El presidente solicitó que se dejara constancia que el acta de la sesión de directorio de la Sociedad se encontraba aprobada en razón de haber sido firmada por todos los asistentes a la misma y pegada en el libro de actas correspondiente, con anterioridad a esta fecha.

## II.   SITUACIÓN FINANCIERA DE LA SOCIEDAD

Toma la palabra el gerente general de la Sociedad y señala que, conforme se expuso en el directorio del pasado 18 de octubre, la Sociedad enfrenta una compleja situación económica y financiera que no le ha permitido cumplir con sus obligaciones. Esas obligaciones dicen relación principalmente con aquellas derivadas de la emisión y colocación de bonos en el mercado de los Estados Unidos de América por un total de USD $403 millones, con vencimiento al 15 de junio de 2033, sujeta a la regla 144 A y a la regulación S de la Ley de Valores de los Estados Unidos de América de 1933 y sus modificaciones, realizada por Inversiones Latin America Power Limitada ("ILAP"), matriz de la Sociedad, en el año 2021, con el fin de obtener financiamiento para el desarrollo de los proyectos energéticos de la Sociedad y de Norvind S.A. ("Norvind", y conjuntamente con la Sociedad e ILAP, denominadas las "Sociedades"). La Sociedad y Norvind son garantes de las obligaciones de ILAP en relación con los bonos emitidos.

Manifiesta el gerente general que, como es de público conocimiento, las Sociedades celebraron, con fecha 3 de julio de 2023, un acuerdo de suspensión y prórroga (el "Acuerdo") (*Standstill and Forbearance Agreement*) con tenedores de bonos que representan más del 75% (los "Tenedores de Bonos") del monto de capital insoluto de sus bonos preferentes garantizados a tasa 5,125% con vencimiento en 2033, emitidos de conformidad con el *Indenture* de fecha 15 de junio de 2021.

Durante la vigencia del Acuerdo, las Sociedades y los Tenedores de Bonos han negociado y analizado distintas opciones estratégicas y alternativas para hacer frente a la situación de liquidez de las Sociedades. Estas negociaciones concluyeron, en primer lugar, en la celebración del documento denominado *Restructuring Support Agreement* ("RSA"). El RSA establece las bases

1

para iniciar, dentro de los próximos días, un proceso de reorganización voluntario bajo el capítulo 11 del Título 11 del Código de Estados Unidos (el "Código de Quiebras") en la Corte de Quiebras de los Estados Unidos para el Distrito Sur de Nueva York, o en otra corte que se acuerde con la mayoría de los Tenedores de Bonos que forman parte del RSA (en adelante, dicha corte, el "Tribunal de Quiebras" y dicho procedimiento, el "Procedimiento del Capítulo 11"). El fin del Procedimiento del Capítulo 11 es obtener la aprobación de un plan que permita reestructurar la deuda de ILAP, conforme a los términos y condiciones acordados previamente en el documento denominado *Restructuring Term Sheet*, adjunto al RSA (la "Restructuración).

El RSA contiene el marco en virtud del cual ILAP espera restructurar su deuda, para la cual se están preparando una serie de documentos que describan en detalle el plan de restructuración a presentar en el Procedimiento del Capítulo 11(el "Plan"), incluyendo, no por ello limitando, el documento denominado *Disclosure Statement, Indenture of SSN and SPN, Indenture of the Convertible Notes*, and *Sales Facilitation Agreement*.

El gerente general señala que las Sociedades tienen la intención de iniciar el Procedimiento del Capítulo 11 dentro de los próximos días, esperando terminar completamente el proceso dentro del primer trimestre de 2024. La Restructuración establecida en el RSA y en el Plan entrará en vigencia en la fecha en que se cumplan, o se renuncien por la mayoría de los acreedores parte del RSA, las condiciones previas para la efectividad del Plan.

Continúa el gerente general informando que durante estas semanas se ha estado preparando la documentación en idioma inglés a ser presentada al inicio del Procedimiento del Capítulo 11, cuyas versiones más actualizadas y casi finales se han puesto a disposición de los directores de manera previa a esta sesión, dentro de los cuales se encuentran, entre otros, el *Disclosure Statement*, el *Plan*, y los *Indentures de los SSN y SPN*, así como el de los *Convertible Notes*.

Finalmente, el gerente general señala a los directores presentes que, como parte de la Restructuración, las partes celebrarán un acuerdo de facilitación de ventas (*Sales Facilitation Agreement*) con el fin de hacer sus mejores esfuerzos para vender el 100% de las participaciones de ILAP a un tercero antes del 31 de diciembre de 2025. Una versión casi acordada del documento, que se otorgará en inglés, ha sido circulada a los directores con anterioridad a esta sesión.

Asimismo, el gerente general explica que mientras se lleve a cabo la Restructuración, las Sociedades esperan continuar cumpliendo con sus obligaciones con las contrapartes de sus contratos relevantes (contratos de suministro de energía eléctrica, contratos de operación y mantenimiento, contratos de arrendamiento, entre otros), proveedores de servicios en el curso ordinario de sus operaciones.

El gerente general manifestó que, el propósito de la presente sesión, es, aprobar dar inicio al Procedimiento del Capítulo 11 en los próximos días, otorgar los poderes necesarios para tal propósito, así como aprobar el contenido actual y casi finalizado del Plan y de los documentos anexos y complementarios al mismo, así como cualquier otra documentación requerida para tales efectos y que dan cuenta del proceso de negociación, dentro de los cuales se encuentran, a modo meramente ilustrativo, los documentos denominados *Disclosure Statement, Indenture of SSN and SPN, Indenture of the Convertible Notes* , *Sales Facilitation Agreement*, entre otros.

Los directores agradecieron la exposición del gerente general y acordaron por unanimidad omitir la lectura del Plan y de sus documentos anexos, complementarios y anteriormente mencionados, considerando que todos los habían recibido con anterioridad a esta fecha y se encuentran en conocimiento de su texto y cláusulas específicas.

## III.  ACUERDOS

Luego de un prolongado intercambio de comentarios y opiniones, y tras una detallada revisión de las materias expuestas, incluyendo la situación de liquidez de la Sociedad, las diferentes alternativas de solución existentes y los riesgos a los que se ve expuesta la Sociedad, así como el impacto que implica lo anterior para el negocio y operación diaria de la Sociedad, y habiendo tenido la oportunidad de consultar asesores financieros y legales de la Sociedad y de considerar plenamente cada una de las alternativas estratégicas disponibles para la Sociedad, y habiéndose puesto a disposición de los directores las versiones actuales y/o casi finalizadas del Plan, el directorio de la Sociedad, por la unanimidad de sus miembros, acordó:

(i)    Autorizar que la Sociedad celebre, suscriba y otorgue el Plan, y todos sus anexos y documentos complementarios, dentro de los cuales se encuentran, a modo meramente ilustrativo, y sin que la enumeración siguiente sea taxativa, los documentos denominados *Disclosure Statement, Indenture of SSN and SPN, Indenture of the Convertible Notes* y el *Sales Facilitation Agreement*, entre otros, todo en los términos expuestos por el gerente general, así como todos los actos y contratos que sean necesarios para obtener y materializar dichos acuerdos y/o presentar, ejecutar y completar el Plan y la Restructuración. El directorio ratifica expresa e íntegramente todo acto, contrato o documento suscrito a la fecha por la Sociedad, o por cualquiera de los Apoderados o Mandatarios, según se definen más adelante, con ocasión del Plan y la Restructuración, siéndole tales actos o contratos plenamente oponibles a la Sociedad, asumiendo la totalidad de los derechos y obligaciones de que ellos emanan.

(ii)   Aprobar y autorizar el inicio del Procedimiento del Capítulo 11 y la presentación y solicitud de aprobación del Plan (en su versión enmendada o modificada en cada momento e incluyendo todos los anexos y suplementos del mismo, según lo contempla el RSA), junto a todos sus documentos complementarios.

(iii)  Otorgar poder especial, pero tan amplio como en derecho se requiera, a los señores Esteban Moraga Morales, cédula de identidad N° 13.669.349-2, Óscar Morales Cabellos, cédula de identidad N° 23.579.343-1, Vicente Orueta Burchard, cédula de identidad N° 18.391.766-8 y doña Francisca Pérez Castillo, cédula de identidad N° 17.088.253-9, (cada uno de ellos, un "Apoderado", y conjuntamente los "Apoderados"), quienes podrán, actuando individualmente uno cualquiera de ellos, o con uno o más Apoderados y anteponiendo a su firma la razón social, representar a la Sociedad, en Chile o en el extranjero, en la suscripción y ejecución del Plan y de sus anexos y documentos complementarios, entre los cuales se encuentran, a modo meramente ilustrativo, y sin que la enumeración siguiente sea taxativa,  los documentos denominados *Disclosure Statement, Indenture of SSN and SPN, Indenture of the Convertible Notes, Sales Facilitation Agreement*, entre otros, así como en todo tipo de actos o contratos nominados o innominados, ya sea mediante

instrumentos públicos o privados, que digan relación con el objeto de esta sesión.. Los Apoderados pueden efectuar toda clase de declaraciones y garantías, formas y modalidades contractuales, pudiendo negociar y acordar toda clase de pactos o estipulaciones sean en idioma español, inglés u otro, incluyendo someterse a la ley y tribunales extranjeros, en todos los actos y contratos que celebre la Sociedad; pudiendo incorporar todo tipo de cláusulas a dichos actos y contratos, y sean de la esencia, de la naturaleza o meramente accidentales, con los más amplios poderes. Los Apoderados pueden llevar a cabo todas y cada una de las acciones que se consideren necesarias, apropiadas o convenientes para llevar a cabo la Reorganización en virtud del Código de Quiebras, incluyendo, sin limitación, cualquier acción necesaria para mantener el curso ordinario de operaciones del negocio de la Sociedad. Además, los Apoderados pueden ejecutar, reconocer, verificar, entregar y presentar todos los demás acuerdos, documentos, instrumentos y certificados, y tomar otras medidas que puedan ser necesarias, adecuadas o apropiadas para llevar a cabo la intención y los propósitos de las resoluciones contenidas en el presente directorio. Cada Apoderado de la Sociedad queda autorizado para certificar a terceros con respecto a la adopción de estas resoluciones en la forma y sustancia que satisfaga a dicha parte.

(iv)   Otorgar poderes especiales de representación a los Profesionales Retenidos (según se define en este documento y junto con los Apoderados, los "Mandatarios"), de manera que, actuando individualmente, cada uno de ellos pueda, en nombre y representación de la Sociedad:

(a)   Elaborar un plan de reorganización o liquidación para la consideración y aprobación de los acreedores y el Tribunal de Quiebras. Ejecutar y presentar en nombre de la Sociedad todas las peticiones, anexos, listas y otros escritos, mociones, documentos y tomar las acciones que consideren necesarias, apropiadas o convenientes para asegurar la correcta presentación, ejecución e implementación del Plan y del Procedimiento del Capítulo 11, incluyendo, sin limitación, cualquier medida necesaria para mantener el curso ordinario de los negocios de la Sociedad.

(b)   Representar y asistir a la Sociedad en el cumplimiento de sus obligaciones en virtud del Código de Quiebras, y adoptar todas y cada una de las medidas necesarias para promover los derechos y obligaciones de la Sociedad; quedando asimismo facultado para ejecutar los acuerdos de retención que correspondan, pagar las retenciones y honorarios, y hacer que se presente, ante el Tribunal de Quiebras competente, una solicitud de autorización para contratar y pagar la retención de los servicios de Lazard Frères & Co. LLC como banquero de inversiones, Greenberg Traurig, LLP como asesor jurídico estadounidense y Barros, Silva Varela & Vigil Abogados Limitada como asesores jurídicos chilenos; y Epiq Corporate Restructuring, LLC como agente de notificación y reclamaciones (conjuntamente, los "Profesionales Retenidos"). Cada Apoderado está autorizado, facultado y dirigido a emplear a cualquier otro profesional para ayudar a la Sociedad en el cumplimiento de sus obligaciones bajo el Código de Quiebras; y en relación con ello, a cada Apoderado, con poder de delegación, se le autoriza, facultada y ordena por el presente a ejecutar acuerdos de retención apropiados, pagar honorarios y retenciones adecuadas, y presentar una solicitud apropiada para obtener la autorización de retener los servicios de cualquier otro profesional que sea necesario, adecuado o conveniente.

(c)   Solicitar la aprobación de una o más órdenes o mociones que autoricen el uso de garantías líquidas, según se define en la sección 363(a) del Código de Quiebras, y, en la medida necesaria, la obtención de financiamiento en el Procedimiento del Capítulo 11 conocido como financiamiento de deudor en posesión ("DIP Financing") por parte de la Sociedad de acuerdo con los términos acordados en el RSA y el *Restructuring Term Sheet*. Para lo anterior, los Mandatarios podrán negociar, ejecutar y entregar todos y cada uno de los acuerdos, instrumentos o documentos, por o en nombre de la Sociedad, que sean necesarios para usar garantías líquidas, así como cualquier acuerdo adicional o ulterior para implementar el DIP Financing. Lo anterior puede incluir, sin por ello limitar, la constitución de gravámenes en favor de los prestamistas existentes y cualquier otro acuerdo, instrumento o documento que deba ejecutarse y entregarse en relación con los mismos, todo ello con los cambios y adiciones que apruebe cualquiera de los Mandatarios, aprobación que quedará probada, de forma concluyente, por la adopción de dicha medida o por la ejecución y entrega de los mismos, con sujeción a la aprobación del Tribunal de Quiebras.

Se deja expresa constancia que los poderes otorgados en la presente sesión de directorio no revocan ningún otro poder que se hubiere otorgado por la Sociedad con anterioridad a esta fecha, los que permanecen plena e íntegramente vigentes.

## IV.   TRAMITACIÓN DE LOS ACUERDOS Y REDUCCIÓN A ESCRITURA PÚBLICA

El directorio acordó por unanimidad facultar a los señores Fernando Barros Vial, Josefina María Castro Undurraga y a Natalia Galindo Bañados para que, actuando individualmente uno cualquiera de ellos, reduzca a escritura pública todo o parte del acta que se levante de la presente sesión, una vez se encuentre firmada por todos los asistentes a la misma y efectúen todos los trámites, actuaciones y gestiones que fueren necesarias o convenientes para legalizar los acuerdos adoptados precedentemente.

El directorio recibió notificación suficiente de las materias tratadas en las resoluciones anteriores, según pudiesen requerirlo los documentos de organización de la Sociedad, o renuncian a cualquier derecho a haber recibido dicha notificación.

El directorio renunció irrevocablemente a la notificación de la hora, lugar y propósito de la reunión y de cualquier aplazamiento de la misma, en la medida en que dicha notificación fuera requerida por los documentos constitutivos de la Sociedad.

El directorio acordó por unanimidad que los acuerdos adoptados en la presente sesión producirán sus efectos inmediatamente, una vez que el acta se encuentre firmada por todos los directores asistentes, sin que sea necesaria su aprobación por otra sesión posterior o el cumplimiento de ninguna ulterior formalidad.

No habiendo más asuntos que tratar, y siendo las 10:00 horas, se agradeció a los presentes por la presencia y se levantó la sesión.

_____
**Óscar Morales Cabellos**
Presidente

_____
**Esteban Moraga Morales**
Secretario

_____
**Vicente Orueta Burchard**
Director

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **Chapter 11** |
| **SAN JUAN S.A.,** | **Case No. 23-[XXXXX (●)]** |
| **Debtor.** | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the

following are corporations, other than a governmental unit, that directly or indirectly own 10% or

more of any class of the Debtor's equity interests:

| Shareholder | Approximate Percentage of Issued and Outstanding Interests Held |
|---|---|
| Inversiones Latin America Power Ltda. | 99% of equity interests of San Juan S.A. |
| Latin America Power S.A. | 99.9999% of membership interests of Inversiones Latin America Power Ltda. |
| LAP Renewables B.V. | 99% of equity interests of Latin America Power S.A. |

*[Remainder of page is intentionally blank]*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| SAN JUAN S.A., | Case No. 23-[XXXXX (●)] |
| Debtor. | |

## LIST OF EQUITY SECURITY HOLDERS

| Name | Address | Percentage of Issued and Outstanding Shares |
|---|---|---|
| Inversiones Latin America Power Ltda. | Cerro El Plomo 5680 Oficina 1202 Las Condes Santiago, Chile | 99.99% |
| Latin America Power S.A. | Cerro El Plomo 5680 Oficina 1202 Las Condes Santiago, Chile | < 1.0% |

*[Remainder of page is intentionally blank]*

| Fill in this information to Identify the case: |
|---|
| Debtor Name:    San Juan S.A. |
| United States Bankruptcy Court for the:    Southern District of New York |
| Case Number (If known): |

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A consolidated list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1  ENEL GENERACION CHILE S.A. SANTA ROSA 76 PISO 17 REGION METROPOLITANA SANTIAGO  8330099 CHILE | RECAUDACION.CLIENTES@ENEL.COM | TRADE CLAIM | | | | $9,140,666.94 |
| 2  TRANSELEC S.A AVENIDA ORINOCO 90 PISO 14 LAS CONDES SANTIAGO  7560970 CHILE | PAGOS@TRANSELEC.CL | TRADE CLAIM | | | | $429,408.79 |
| 3  VESTAS CHILE TURBINAS EOLICAS LOS MILITARES 4611 LAS CONDES REGION METROPOLITANA SANTIAGO  CHILE | MAOFA@VESTAS.COM | TRADE CLAIM | | | | $291,331.39 |
| 4  CLARO Y CIA AV APOQUINDO 3721 PISO 14 LAS CONDES SANTIAGO CHILE | PHONE: +562 2367 3000 | TRADE CLAIM | | | | $130,482.90 |
| 5  AGRICOLA KONAVLE CARRIZALILLO KM. 114 S/N FREIRINA CHILE | JUANPROKURICA@HOTMAIL.COM | LEASE | | | | $52,943.80 |
| 6  COLBUN SA AV. APOQUINDO 4775 PISO11 LAS CONDES SANTIAGO  7580097 CHILE | PHONE: +56 2 2460 4000 RECEPCION@COLBUN.CL | TRADE CLAIM | | | | $40,578.67 |

Debtor: San Juan S.A.                                                           Case Number: (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7  GERARDO FINDEL WESTERMEIER AV. BALMACEDA 595 LA SERENA COQUIMBO CHILE | | TRADE CLAIM | | | | $27,269.57 |
| 8  ELOY SEGURIDAD EIRL ABEL ARMAND 2156 VALLENAR ATACAMA  1611677 CHILE | ELOYSEGURIDAD@GMAIL.COM | TRADE CLAIM | | | | $20,010.06 |
| 9  SOCIEDAD SERVICIOS TECNOLOGICOS Y TELECOMUNICACIONES TELCONOR LIMITADA AV. MANUEL ANTONIO MATTA 150, PISO 2 REGION METROPOLITANA SANTIAGO  1700000 CHILE | CSALINAS@TELCONOR.CL | TRADE CLAIM | | | | $18,009.86 |
| 10  DIEGO DE ALMAGRO SOLAR SPA AV. CERRO EL PLOMO 5420 OFICINA 402 LAS CONDES REGION METROPOLITANA SANTIAGO  7560742 CHILE | PHONE: 226048111 C.MENESES@S-ENERGY.COM | TRADE CLAIM | | | | $16,385.04 |
| 11  SOCIEDAD DE MONTAJES ELECTRICOS RCA LTDA AVENIDA LA CANTERA Nº 1998 REGION DE COQUIMBO  1780000 CHILE | PHONE: (51) 2278848 CONTACTO@RCAELEC.CL | TRADE CLAIM | | | | $16,020.07 |
| 12  ESTUDIOS ELECTRICOS CHILE S.A. MANQUEHUE NORTE 160, OF. 41-1 LAS CONDES, SANTIAGO CHILE | PHONE: 232468750 INFO@ESTUDIOS-ELECTRICOS.COM | TRADE CLAIM | | | | $12,125.47 |
| 13  FUNDACION HUELLA LOCAL PUMA 1180, 8420189 RECOLETA REGION METROPOLITANA CHILE | | TRADE CLAIM | | | | $11,679.99 |
| 14  CHESTER SOLAR IV SPA AV. APOQUINDO 6410 OF 704 REGION METROPOLITANA LAS CONDES  7560903  CHILE | C.MENESES@S-ENERGY.COM; A.HACHUN@S-ENERGY.COM; A.HACHUN@S-ENERGY.COM | TRADE CLAIM | | | | $10,695.41 |
| 15  SOC DE INVERSIONES LAS VEGAS AVDA FCO DE AGUIRRE 0225 LA SERENA, COQUIMBO CHILE | MARENAS@ILV.CL | TRADE CLAIM | | | | $7,409.21 |
| 16  LA ACACIA SPA AV. APOQUINDO 6410 OF 704 REGION METROPOLITANA LAS CONDES  7560903  CHILE | INTERCAMBIO@DTE.NUBOX.COM; A.HACHUN@S-ENERGY.COM; C.MENESES@S-ENERGY.COM | TRADE CLAIM | | | | $6,811.29 |
| 17  SEGURIDAD Y SALUD SUR LTDA AVDA. PRESIDENTE IBANEZ 150 PUERTO MONTT, LOS LAGOS CHILE | SEGURISUMEDICAL@GMAIL.COM | TRADE CLAIM | | | | $5,731.93 |

Debtor: San Juan S.A.                                                                    Case Number (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 18 | ENEL DISTRIBUCION CHILE S.A. AV. STA. ROSA 76 PISO 17 REGION METROPOLITANA SANTIAGO  8330099  CHILE | DTE.GRUPOENELCHILE@ENEL.COM; GERARDO.PINTO@ENEL.COM; JAIME.GARCIA@ENEL.COM; JOSE.MATUSKA@ENEL.COM | TRADE CLAIM | | | | $5,038.04 |
| 19 | CINERGIA CHILE SPA MARCO BRAMANTE CERRO EL PLOMO N° 5630 PISO 9 LAS CONDES, SANTIAGO CHILE | PHONE: (56 9) 8294 9156 KAMEONE.EMP@GMAIL.COM; CSAAVEDRA@CINERGIA.CL; PORTALDEPAGOS@IGX.CL | TRADE CLAIM | | | | $4,552.57 |
| 20 | CIA BARRICK CHILE GENERACION LTDA CHILE AVDA. RICARDO LYON 222, PISO 8 PROVIDENCIA, SANTIAGO  7500000 CHILE | CVILLALOBOST@BARRICK.COM | TRADE CLAIM | | | | $4,218.04 |
| 21 | JORPA INGENIERIA SA DRESDEN 4672 SANTIAGO  8930009 CHILE | CDYSLI@JORPA.CL | TRADE CLAIM | | | | $3,884.23 |
| 22 | PV SALVADOR SA AVENIDA LA DEHESA 181 208, LAS CONDES, SANTIAGO  7710112 CHILE | DISLER@ETRION.COM | TRADE CLAIM | | | | $3,835.15 |
| 23 | HIDROLECTRICA LA CONFLUENCIA CHACABUCO 792 LC 21 EDIFICIO ALTO SAN FE , SAN FERNANDO, SANTIAGO, VI REGION DEL LIBERTADOR GENERAL BERNARDO LA RUFINA SAN FERNANDO, OHIGGINS  CHILE | CONFLUENCIA_DTE@TENERGIA.CL | TRADE CLAIM | | | | $3,806.60 |
| 24 | BARROS Y ERRAZURIZ ABOGADOS LTDA ISIDORA GOYENECHEA 2939 LAS CONDES, SANTIAGO CHILE | CLLANES@BYE.CL | TRADE CLAIM | | | | $3,418.66 |
| 25 | HIDROELECTRICA LA HIGUERA S.A ISIDORA GOYENECHEA 3520, 7550071 LAS CONDES, REGION METROPOLITANA SANTIAGO CHILE | HIGUERA_DTE@TENERGIA.CL | TRADE CLAIM | | | | $2,346.87 |
| 26 | HIDROSANTIAGO SPA AV. PROVIDENCIA 1208, OFICINA 1603 SANTIAGO  7500571 CHILE | PHONE: 966974041 AANDRADES@HIDROSANTIAGO.CL | TRADE CLAIM | | | | $2,232.28 |
| 27 | ESTEYCO CHILE SPA BADAJOZ 130, 7560908 LAS CONDES, REGION LAS CONDES, SANTIAGO  7560908 CHILE | CARLOSF@ESTYCO.COM | TRADE CLAIM | | | | $2,154.36 |

Debtor: San Juan S.A.                                         Case Number (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 28    CENTRAL COLMITO S.A VICTORIA SALINAS CERRO EL PLOMO 5680 PISO 15, OFICINA 1501 LAS CONDES, SANTIAGO  CHILE | PHONE: 228207113 FACTURACION@ICPOWER.CL ; WINDTE_DTE@CUSTODIUM.COM; JAVIER.PUJOL@INKIAENERGY.COM; MARCIA.GALAZ@INKIAENERGY.COM | TRADE CLAIM | | | | $2,058.36 |
| 29    CORPORACION NACIONAL DEL COBRE CHILE FRANCISCO DANITZ MILLER HUERFANOS 1270 SANTIAGO CHILE | PHONE: 223922398 CODELCORECEPCION@CUSTODIUM.COM; CVALD027@CODELCO.CL; JCARD014@CODELCO.CL | TRADE CLAIM | | | | $2,048.25 |
| 30    NORNERTO ELGUETA ALUCENA LA MANGA 2 VILLAHERMOSA  86068 MEXICO | PHONE: 946193179 NELGUETA06@GMAIL.COM | TRADE CLAIM | | | | $1,926.45 |

| Fill in this information to identify the case and this filing: |
| --- |

Debtor Name  __San Juan S.A.__

United States Bankruptcy Court for the: __Southern__ District of __NY__
(State)

Case number (*If known*):  _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

- ☐ *Schedule H: Codebtors* (Official Form 206H)

- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

- ☐ Amended *Schedule* _____

- ☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

- ☑ Other document that requires a declaration__Corporate Ownership Statement, List of Equity Security Holders__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __11/30/2023__          ✗ _____
MM / DD / YYYY          Signature of individual signing on behalf of debtor

__Esteban Moraga__
Printed name

__Chief Executive Officer__
Position or relationship to debtor